# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| MARSHALL R. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14CV423 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Marshall R. Williams, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 9, 12). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 8, 2011, alleging a disability onset date of December 31, 2008. (Tr. 135-41, 142-48.) Upon denial of those applications initially (Tr. 60-76, 96-103) and on reconsideration (Tr. 77-95, 105-13),

Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 114-15). Plaintiff (proceeding pro se) and a vocational expert attended the hearing. (Tr. 24-59.) By decision dated March 13, 2013, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 13-23.) On April 22, 2014, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2009.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 31, 2008, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: aortic valve disorder (also described as systolic cardiac murmur); peripheral artery disease; and osteoarthritis of the hip.
>
> . . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . with exceptions: [Plaintiff] can lift up to twenty pounds occasionally, and he can lift and carry up to ten pounds frequently. He has the ability to operate foot controls with the right extremity frequently but not continuously. He can occasionally climb stairs, but he can never climb ropes or scaffolds. He can occasionally balance, stoop, or

crouch. He must avoid concentrated exposure to irritants such as fumes, odors, gases, and poorly ventilated areas.

. . . .

6. [Plaintiff] is unable to perform any past relevant work.

. . . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from December 31, 2008, through the date of this decision.

(Tr. 18-23 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation

3

marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

4

upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) the ALJ "incorrectly found that treating cardiologist Dr. [Guy] [d]e Gent's medical opinion[s] regarding [Plaintiff's]

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

shortness of breath on exertion [were] entitled to little weight" (Docket Entry 10 at 3 (citing Tr. 269, 270)); and

(2) "[n]ew treating medical source opinion evidence [from orthopedist Dr. Peter Whitfield,] incorporated into the administrative record by the Appeals Council[,] requires remand . . . under the Fourth Circuit Court of Appeals['] decision [in] Meyer v. Astrue, [662 F.3d 700 (4th Cir. 2011)]" (id. at 9; see also Tr. 288 (new evidence)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 13 at 5-13.)

**1. Dr. de Gent's Opinions**

Plaintiff first faults the ALJ for giving "little weight" to the opinions of Plaintiff's treating cardiologist, Dr. de Gent, that Plaintiff suffered from "significant shortness of breath on minimal exertion" (Tr. 270), and that "[f]rom a cardiac perspective . . . [Plaintiff] is experiencing significant morbidity in the form of decreased exercise tolerance and shortness of breath related to his underlying valvular heart disease" (Tr. 269). (See Docket Entry 10 at 3, 7 (citing Tr. 21).) More specifically, Plaintiff disputes the ALJ's conclusion that Dr. de Gent's opinions are "inconsistent with his acknowledg[]ment that [Plaintiff's] aortic valve disorder does not require surgery and his earlier medical finding that [Plaintiff] did not have significant coronary artery disease." (See id. at 7-9 (citing Tr. 21).) According to

8

Plaintiff, "medical literature" supports Dr. de Gent's opinion that Plaintiff's aortic insufficiency causes him to suffer from "significant dyspnea" (Tr. 269) despite not yet reaching a surgical level of severity (Docket Entry 10 at 8 (citing http://www.mayoclinic.org/diseases-conditions/aortic-valve-regurgitation/basics/symptoms/con-20022523 and http://www.mayoclinic.org/diseases-conditions/aortic-valve-regurgitation/basics/definition/con-20022523)). Further, Plaintiff urges the irrelevancy of the finding that he does "not have significant coronary artery disease" (Tr. 21), because "aortic insufficiency is completely unrelated to coronary artery disease" (Docket Entry 10 at 9). Plaintiff's arguments on these points have merit.

The treating source rule generally requires an ALJ to give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ

9

affords an opinion.  See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii).  Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference <u>only</u> if well-supported by medical signs and laboratory findings <u>and</u> consistent with the other substantial evidence in the case record.  See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4).  "[I]f a physician's opinion is not supported by clinical evidence <u>or</u> if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  <u>Craig</u>, 76 F.3d at 590 (emphasis added).

Here, the ALJ's evaluation of Dr. de Gent's opinions fails to comport with the above-cited regulations and <u>Craig</u>.  As an initial matter, the ALJ failed to identify which of Dr. de Gent's statements lacked consistency with his findings regarding heart surgery and coronary artery disease.  (<u>See</u> Tr. 21.)  In that regard, the ALJ identified only "Dr. [de] Gent's letter . . . [in] support of [Plaintiff's] application for disability."  (<u>Id.</u>)  The Court should decline to assess the consistency of Dr. de Gent's opinions with the record without a clear statement from the ALJ as to which statements require scrutiny.  <u>See generally</u> Social Security Ruling 96-2p, <u>Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions</u>, 1996 WL 374188, at *5 (July 2, 1996) (requiring that an ALJ's decision "contain specific reasons

10

for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight"); see also Bray v. Commissioner of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.") (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

Moreover, even if the Court can proceed under the assumption (as Plaintiff did, see Docket Entry 10 at 3) that the ALJ targeted Dr. De Gent's opinions that Plaintiff suffered from "significant shortness of breath on minimal exertion" (Tr. 270), and that "[Plaintiff] is experiencing significant morbidity in the form of decreased exercise tolerance and shortness of breath related to his underlying valvular heart disease" (Tr. 269), the ALJ's stated bases for discounting those opinions lack validity for several reasons. First, Dr. de Gent emphasized that, even absent an immediate need for surgery, Plaintiff "nevertheless does have significant dyspnea" and that Plaintiff "is experiencing significant morbidity in the form of . . . shortness of breath." (Id.) Thus, by focusing on Dr. de Gent's opinion whether Plaintiff

11

needed heart valve surgery, the ALJ overlooked Dr. de Gent's more pertinent opinion that Plaintiff's shortness of breath significantly limited him, regardless of whether his condition presently warranted surgery.

Second, the fact that Plaintiff's diagnostic testing showed that he did not have significant coronary artery disease (an entirely different medical condition than aortic insufficiency, see http://www.mayoclinic.org/diseases-conditions/coronary-artery-disease/basics/definition/con-20032038 (last visited August 13, 2015)) holds no relevance to the severity of Plaintiff's aortic insufficiency, particularly where neither Plaintiff nor Dr. de Gent included coronary artery disease as a basis for Plaintiff's symptoms or disability (see Tr. 167 (Plaintiff's Disability Report listing allegedly disabling conditions); Tr. 269).

Additionally, Dr. de Gent supported his opinions with results from Plaintiff's cardiac catheterization and transesophageal echocardiogram (see Tr. 269-78), which certainly constitute "medically acceptable clinical and laboratory diagnostic techniques," see 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under these circumstances, the ALJ has failed to show that Dr. de Gent's opinions are "not supported by clinical evidence" or that such opinions are "inconsistent with other substantial evidence," Craig, 76 F.3d at 590.

Finally, the ALJ's failure to adequately support her decision to afford "little weight" to Dr. de Gent's opinion (Tr. 21) does not constitute harmless error. Although an ALJ's failure to sufficiently weigh a medical source's opinion can amount to harmless error, such as where the plaintiff otherwise fails to show how a proper weighing of the opinion would have altered his or her RFC, see, e.g., Tanner v. Colvin, 602 F. App'x 95, 100-01 (4th Cir. 2015), here, Dr. de Gent's opinion that Plaintiff suffers from "significant shortness of breath on minimal exertion" (Tr. 270 (emphasis added)) calls into question the ALJ's determination that Plaintiff remains capable of performing even a modified range of light work (Tr. 19-20). See Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2 ("SSR 83-10") 1983 WL 31251, at *6 (1983) ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday.").[5]

Defendant argues in her brief that "medical records . . . in the months leading up to Plaintiff's appointment with Dr. [d]e Gent" (Docket Entry 13 at 8 (citing Tr. 264-67 (appointment with

---

[5] The doubt about Plaintiff's ability to perform the prolonged standing and walking required by light work deepens when considering the new evidence Plaintiff submitted to the Appeals Council from treating orthopedist, Dr. Whitfield. (See Tr. 288.) As argued by Plaintiff in his second assignment of error (see Docket Entry 10 at 9-13), Dr. Whitfield stated that Plaintiff's right hip impairment prevented "him from standing and/or walking for 6 hours out of an 8 hour day." (Id.)

13

primary care physician Dr. Tesfaye Fanta wherein Plaintiff denied shortness of breath and revealing normal examination of heart and lungs))) and "Plaintiff's daily activities" (id. at 9 (citing Tr. 29, 33, 38, 40, 46-47 (detailing Plaintiff's ability to assist his elderly parents and perform certain small jobs))) "support the weight given [by the ALJ] to Dr. [d]e Gent's letter" (id. at 8). However, the ALJ in this case did not cite to any such evidence in support of her decision to assign Dr. de Gent's opinions "little weight" (Tr. 21), and the Court should not consider such post-hoc rationalizations for the ALJ's decision-making. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (holding that reviewing court cannot affirm decision on ground on which ALJ did not himself rely); Alexander v. Colvin, Civil Action No. 9:14-2194-MGL-BM, 2015 WL 2399846, at *6 (D.S.C. May 19, 2015) (unpublished) (rejecting Commissioner's argument as "only a post hoc rationalization for upholding the decision, since that is not actually what the ALJ did").

In sum, the ALJ's decision to afford Dr. de Gent's opinions "little weight" (Tr. 21) constitutes reversible error.

**2. New Evidence**

Plaintiff maintains in his remaining assignment of error that new opinion evidence from orthopedist Dr. Whitfield, "incorporated into the administrative record by the Appeals Council, requires remand . . . under the Fourth Circuit Court of Appeals['s] decision

14

[in] Meyer[]" (Docket Entry 10 at 9; see also Tr. 288 (new evidence)). Upon remand, the ALJ must not only reassess Dr. de Gent's opinions, but also evaluate Dr. Whitfield's opinions, as the Appeals Council has already incorporated Dr. Whitfield's evidence into the record. Accordingly, the Court should decline to address the merits of Plaintiff's second assignment of error.

### III. CONCLUSION

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings that properly address the opinions of Drs. de Gent and Whitfield in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c). As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) should be denied and Plaintiff's Motion for Judgment Reversing the Decision of the Commissioner of Social Security (Docket Entry 9) should be granted in part (i.e., to the extent it requests remand).

                                              /s/ L. Patrick Auld
                                              **L. Patrick Auld**
                                    **United States Magistrate Judge**

August 14, 2015